This case is case number 4-16-0121 People v. Carl Mack and appearing before the appellant is attorney St. Germain and for the appellate is attorney Zimmerman. Good afternoon. Mr. St. Germain are you ready to proceed? Yes sir. You may. Thank you your honors. Good afternoon and may it please the court, counsel. My name is Santo St. Germain and I am here on behalf of Carl Mack. Mr. Mack was convicted of one count of possession of a firearm by a felon. However, the state evidence in this case turned on the credibility of Constance Wilson. Wilson was the only witness that could place Mr. Mack in possession of the gun at issue. However, the trial court prevented the defense from properly impeaching Ms. Wilson and allowed the state to bolster Ms. Wilson's testimony with prior consistent statement. Both error separately and jointly entitles Mr. Mack to a new trial. At the time of the offense and at the time of the trial, Wilson had a pending arrest warrant and two felony convictions. Her first conviction was dated from 2007 and it was for an aggravated battery while the aggravated battery and a domestic battery. These two offenses are not the same despite the trial court's ruling. The trial here was in 2015. The trial court prevented the defense from impeaching Ms. Wilson with the 2007 aggravated battery. However, it is undisputed from the record and from the arguments today that the aggravated battery conviction from 2007 met the two first requirements for the Montgomery test. The two first requirements was first that this be a felony that is punishable by at least one year in imprisonment. And we submit that an aggravated battery is such felony. Second, that it falls within the ten year cutoff period from the date of trial. And because the conviction was from July 6, 2007 and the trial was in August 25, 2015, this is an only eight year. It is within the ten year period. The main cost of this issue is the third Montgomery factor. And the third Montgomery factor is the balancing factor. The balancing of the probative value versus the prejudicial effect. However, when we're doing this probative versus prejudice evaluation, the prejudice is not the prejudice to the witness, but the prejudice to the parties. In this case, we have a very unusual situation where the testifying witness, the witness to be impeached, is not the defendant. Therefore, the threshold for prejudice or admissibility of such evidence is lower had it been in fact the defendant. Because when you have a situation when the defendant is testifying, the jury may improperly consider the prior conviction as probative of future criminal conduct. Whereas, when you have a non-defendant testifying, the jury is not likely to reach that outcome because the non-defendant witness is not on trial. What occurs to the non-defendant witness is temporary embarrassment. So we submit here that no reasonable person would agree with the trial court that the prejudicial effect of the conviction that was excluded in this case, the 2007 conviction, would be greater than the probative value of its admissibility. What was the jury instructed then in terms of Wilson's prior conviction? What was the offense? The offense of Wilson, the offense that we are requesting should have been admitted. No, the offense that Wilson was, that was admitted for impeachment. The domestic battery. The domestic battery with a prior conviction, right? It was a simple domestic battery. Not domestic battery with a prior conviction. All that was presented to the jury is that she had a prior conviction for domestic battery. The detail has to do with that prior conviction. So the jury wasn't instructed that she was convicted of domestic battery with a prior conviction? No, Your Honor. The jury was informed, she admitted, understand that she had a prior conviction for domestic battery. Did they also know that there was a warrant for arrest when she called the police? Yes. The jury was also informed of that. However, when you look at... Neither conviction has necessarily anything to do with believability. I mean, you know, perjury or... Sure. And one comes in, the older one doesn't, and they know that she's a person familiar with the police and the law and justice system because there's a warrant for arrest. Why isn't the court's ruling... I balanced and I let one in. Two points to answer your question, Your Honor. First, the relevant distance in time of the true conviction doesn't affect the analysis here. Well, in effect, the 10 has got to be within that time frame. Yes. But if it's nine years, it doesn't automatically come in. That goes to remoteness, and remoteness is under Atkinson. That falls under the prejudicial analysis, the truth factor. And again, this is an unusual case where you're looking at a non-defendant witness. This issue of believability, first of all, if you look at the case I cited in People v. Paul, in People v. Paul, felonies are probative of testimonial deceit, and if they fall within the 10-year cutoff period, then we go to the truth factor. But once you're in the truth factor analysis, you have to look at who is the witness. Here, the witness is a state witness, which we submit is the main witness, the only witness that places the defendant with the gun. And this is a witness who has a motive to lie. She was a former lover of the defendant who that night was, and it's undisputed, that night she was angry because the defendant was present at the location with his new girlfriend. So she had a motive to lie, and this raises the threshold. The prejudice of excluding this conviction is greater on the defendant than it would have been on the state. And going back to the believability issue here, the believability issue is magnified when it's the defendant. Again, we're going back to the status of the witness. Here, the witness was the state witness, not the defendant. So the issue of believability is lowered in the truth factor analysis. However, Your Honor, when you take into account this failure to allow this third conviction, you also must look at what happened subsequent to her testimony. Subsequent to her testimony, she testified on the stand that she saw Mr. Mack with the gun. And subsequent to that testimony, the state put on Sergeant William, who further said she saw Mack with the gun. So you have a prior consistent statement coming in to bolster a witness that is impeachable and should have been impeached. And the reason stated for allowing this prior consistent statement is that it goes to police procedure. But it was unnecessary for police procedure. Under People v. Gottschall, the Illinois Supreme Court, I proceeded in X manner. This court reaffirmed that statement in Cameron. And in Cameron, this court said when you have a situation where an objection is raised to a prior consistent statement, there must be a sidebar discussion as to see whether it in fact goes to police procedure. In this situation, the officer went beyond what Gottschall prescribed, and the officer testified to the substance. Yes, Your Honor? No, I'll take that opportunity to jump in here. As to that 09 conviction that was allowed for impeachment purposes, I'm just looking for this. It was domestic battery with a prior conviction. And that the trial court identified it as such when it was ruling on the admission of the convictions for impeachment. So the jury was informed, it sounds like, of a prior conviction. Now, not specifically as to what that conviction was. The jury was informed that she had a prior conviction for domestic battery. With a prior conviction. So the jury is informed of two convictions. I am unsure on that, Your Honor. But the question that was asked by the state is, you have a prior conviction for domestic battery? And she said, yes, I have a prior conviction. Oh, so even though the trial court is referencing it during the hearing, maybe the... That hearing was outside of the purview of the jury. You're saying maybe the jury wasn't informed that it was domestic battery with a prior conviction? Our position is that the jury was informed that she had a domestic battery conviction, not... I'm not talking about positions here. I'm just talking about what does the record reflect? Does the record reflect the jury was informed that she had a domestic battery with a prior conviction? I believe that the record does not reflect the extent of her domestic battery. The record only reflects that she had a conviction for domestic battery. It does not go into the details of that conviction. So it does not say whether it was for a prior conviction. It only says, the state asked her, you do have a conviction? And she said, yes, I do have a conviction for domestic battery. Going back to the 2009 versus the 2007 and the pending arrest warrant, it would have given the jury a full image of Wilson's credibility. It was necessary because it was not prejudicial to the state given the status of Wilson. But then you have this subsequent statement coming in from the police officer, which bolstered her credibility by reaffirming what she had said. And then you have no reason for that subsequent prior consistent statement from Sergeant Williams. Because Sergeant Williams could have simply said, I spoke with Wilson. I proceeded to Thompson's apartment. We searched the apartment and Mr. Mack was arrested. He did not have to go into details of saying, well, I spoke with Wilson. And then Wilson told me Mr. Mack was the shooter. Therefore, I arrested Mr. Mack. As stated in People v. Cameron, when the defense objected to that prior consistent statement, the trial court should have had a sidebar discussion or a discussion outside of the view of the jury to determine whether that statement was necessary for police procedure. That never occurred here, Your Honor. If the court did not have any further questions, we would ask that you reverse and remand. We submit that the evidence in this case was insufficient. However, if the court were to find that the evidence was sufficient, we would ask for a new trial. Okay. Thank you. Thank you, Your Honor. Mr. Zimmerman. May it please the court, counsel. Good afternoon, Your Honors. My name is John Zimmerman from the Fourth District Appellate Prosecutor's Office here on behalf of the state. The state would like to first address defense counsel's contention that Wilson, which was the state's witness, was the only witness that identified the defendant as the shooter. Although this was not in the state's case in chief, in a rebuttal witness, the state called Detective Hubbard, who testified that one of the defendant's witnesses told him on the night that Mack was indeed the shooter. So, for what it's worth, the jury did hear that defendant's witness lacked credibility because on the night of the shooting, he in fact told the detective that Mack was also the shooter, which is in conjunction with Wilson's testimony further evidencing that fact. Now, in regards to the Montgomery discretionary issue, the state understands how in this case it is somewhat different because it is a witness and not the defendant who is being impeached. However, the record makes clear that the trial court was aware of the Montgomery test, explicitly referenced it, and it utilized its discretion in determining that the witness was already being impeached by the 09, I believe, domestic battery, and also that she had a warrant out for arrest on the evening of the occurrence, and the jury was aware of these facts. And as Justice Gennett stated, and the trial court actually explicitly stated in its ruling, is that these two crimes are not crimes of dishonesty or deceit. They're just due to violence, which that doesn't really go directly towards her credibility as a witness, although the state does acknowledge defense counsel's reliance on the case, saying that any felony is considered testimonial deceit. The state also goes back to what Justice Gennett stated, whereas just because it's violence, I don't personally see how that relates to testimonial deceit. It's just a violent incident. It doesn't mean she's an uncredible witness. Going further, if you look throughout the record, the trial court also properly limited the defendant's own prior convictions, which further evidenced the trial court's discretion throughout the trial. And the state's position is that no error occurred regarding this discretionary issue of the impeachment evidence against Wilson. The trial court properly understood and utilized the Montgomery Balancing Test, and as a result, this court should affirm. In regards to the hearsay issues, I'll focus on the second statement regarding the officer's testimony about Wilson stating the defendant was the shooter. The state did initially argue that this was used to explain police procedure, but the state also does acknowledge it's more problematic than the initial statement that was discussed. However, any error regarding this alternative argument is that it's harmless as there's no confrontational issues because Wilson, who was the one who allegedly told the officer and then the officer restated her testimony, was present at trial and was open to cross-examination. And regardless of that, the evidence in this case regarding this specific count was overwhelming. Although we did not get to this issue in your honors prior discussions with counsel, there was eyewitness testimony saying that the defendant was the shooter. There was also a plethora of circumstantial evidence. There was gun shell casings found outside the residence. There was live ammunition found inside the residence. The firearm was found inside the residence. Where the defendant was located, this firearm was linked to the firearm that discharged the shell casings. And there was also gunshot residue that was found on the defendant's hand. Clearly, whether through actual possession or constructive possession, the state overwhelmingly proved the defendant's guilt regarding this issue. And another issue the defendant takes issue with is the jury verdicts. And he argues that because the jury acquitted the defendant of aggravated discharge of a firearm, that it was inconsistent for them to find that defendant possessed the firearm. But as set forth in this brief, besides being conjecture as to what the jury was thinking, the jury could have found that even though the defendant possessed the firearm, he may not have aimed it at a vehicle knowing to be occupied by a person, which would have allowed the jury to still acquit the defendant based on the aggravated discharge of a firearm charge, but still find him guilty of the possession of a firearm. But obviously, as I previously stated, that's conjecture. However, there's still sufficient and overwhelming evidence that the defendant was guilty of possession of a firearm by a felon. One other issue I'll quickly discuss is the misstatement of the evidence by the prosecutor in closing. The state's position is this was clearly just reasonable inferences from the evidence that was presented at trial. The defendant takes issue with the statement that the prosecutor stated the defendant was hiding the firearm. However, if you look at the testimony or the evidence presented at trial, there was evidence the defendant discharged the firearm and that he returned to that specific residence. The police later entered the residence and searched the residence. And where was the firearm found? Partially visible in a closet. It's clearly a reasonable inference that the defendant hid the firearm. Therefore, the prosecutor to state that the firearm was hidden was not improper and it was clearly not prosecutorial misconduct that should require a new trial. I believe that is all the issues that the... Oh, one other issue, I apologize, is the fines issues, which the Supreme Court has just set forth in People v. Yara, I believe, that stated if the circuit clerk improperly imposes fines that the appellate court is without jurisdiction for direct review. So the state would request this court to find that there's no jurisdiction to review those claims and to not rule on that issue. And if there's no further questions, the state requests this court to affirm the trial court's judgment. Thank you, Your Honors. Mr. St. Germain? I have five points, but I'll try to work through them. As to Detective Harbert's testimony, Detective Harbert's testimony is not substantive testimony. It's rebuttal testimony. Detective Harbert's testimony is only relevant as to testing the credibility of Mr. Jackson, which is a state witness. The issues we raise here does not relate to Mr. Jackson's credibility. They relate to Mrs. Wilson's credibility. Mrs. Wilson's credibility should have been properly impeached. It was not, and then it was further bolstered by the state. As to the bolstering of the evidence, the main issue here is whether the statement itself was necessary for police conduct. The statement itself is testimonial hearsay because the statement asserts a matter stated outside of the court and is being asserted for the truth of the matter asserted. It is testimonial hearsay. There's only one exception. Is it necessary to explain police conduct? It is not necessary. In people the Cameron discord have held, mere references to dope and cocaine would violate the rules set in Gatchel. The same thing occurred here, but it's even worse because as the state conceded, he is saying she identified Mr. Mack. This is an identification. This is testimonial hearsay. Going back to the sufficiency of the Montgomery analysis here, the believability is one of many factors. It's one of many factors which enters into a balancing analysis. Whether the court mentioned that factor is relevant, but it's not sufficient to find that it met its burden. It did not violate an abuse of discretion. The standard here is whether no reasonable person would have agreed with the court that the exclusion of that conviction was not more prejudicial than probative. And we submit that given the difficulty with Ms. Wilson's credibility and the fact that she was the only witness that identified Mr. Mack as the shooter, her credibility needed to be fully examined by the jury. As to the evidence here, the evidence was inconclusive. If you take away Ms. Wilson's testimony, what you have is gunshot residue on his left hand, not his right hand. There's no evidence as to which hand he used when he was shooting. Also, it's a question of what the experts said. The experts said that the gunshot residue could have ended up on his hand from three different ways. One, either he discharged a firearm, or he made contact with a firearm that was recently discharged, or he made contact with a surface that was recently discharged. If you look at the evidence presented by the state in this case, you will see that regular discharge of firearm in Mr. Thompson's apartment is a regular occurrence. An apartment to which Mr. Mack said he's only been twice, and that was the second time he's been there. This is not his apartment. There were 17 spent shell casings found on the roof. This is evidence that the firearm was there regularly. There was regular firearm shooting. Mr. Mack could have made contact with any surface, and the gunshot residue would have been there. Which is something that no one disputes in the facts, no one directly. Finally, Your Honor, as to what the jury could have found, the jury was told by Wilson, whose credibility is at issue here, that Mr. Mack shot in the direction of an occupied vehicle. The jury could not have reached one verdict as to the discharge, and then still accept Ms. Wilson's testimony as to the possession. The only way this, the difficulty with that result, is that Ms. Wilson was not properly impeached, and then her credibility was further bolstered by Sergeant William. We submit that you should grant Mr. Mack a new trial, because of the difficulty with the impeachment and the further bolstering. Thank you, Your Honor. Thank you. Thank you both. The case will be taken under advisement and a written decision shall issue.